UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

PATRICIA S. MILLER,       )
    Plaintiff,           )
                       )
v.                   )     Case No: 4:12-CV-4
                       )     Mattice/Carter
MICHAEL S. ASTRUE,      )
Commissioner of Social Security,  )
    Defendant.         )

<u>REPORT AND RECOMMENDATION</u>

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking

judicial review of the final decision of the Commissioner denying the plaintiff a period of

disability, disability insurance benefits, and supplemental security income under Title II and Title

XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, and 1382.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule

72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the

disposition of Plaintiff's Motion for Judgment on the Pleadings (Doc. 10) and Defendant's

Motion for Summary Judgment (Doc. 12).

For the reasons stated herein, I RECOMMEND the decision of the Commissioner

be AFFIRMED.

<u>Plaintiff's Age, Education, and Past Work Experience</u>

Plaintiff was born in 1969 and was 41 years old when the ALJ rendered his decision. (Tr.

23, 132). She has a limited (up to 12th grade but did not graduate) education. She attended a

business community college for three years. (Tr. 22, 31). Plaintiff alleged on her Disability

Report she was disabled due to depression, asthma, and a back injury (Tr. 175). She has past

work experience as an administrative assistant, cashier, and as a worker in delivery, production, and sales (Tr. 176).

## Applications for Benefits

Plaintiff applied for disability insurance benefits (DIB) and Supplemental Security Income (SSI) on March 20, 2009 (protective), alleging her disability began on October 1, 2007 (Tr. 13, 139-45, 146-53). She subsequently amended her alleged onset date to December 1, 2007 (Tr. 13). The administrative law judge (ALJ) held a hearing on November 16, 2010 (Tr. 28-70). The ALJ issued a decision on December 9, 2010, finding Plaintiff not disabled (Tr. 10-27). The Appeals Council denied Plaintiff's request for review (Tr. 1-4), and the ALJ's decision is now ripe for review under 42 U.S.C. §§ 405(g), 1383(C)(3).

## Standard of Review - Findings of the ALJ

To establish disability under the Social Security Act, a claimant must establish he/she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); Abbot v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has done in the past he/she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he/she is not disabled. Id. If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step.

20 C.F.R. § 404.1520; <u>Skinner v. Secretary of Health & Human Servs.</u>, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. <u>Richardson v. Secretary, Health and Human Servs.,</u> 735 F.2d 962, 964 (6th Cir. 1984); <u>Noe v. Weinberger</u>, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. <u>Richardson v. Perales</u>, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); <u>Landsaw v. Secretary, Health and Human Servs.</u>, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. <u>Ross v. Richardson</u>, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. <u>Felisky v. Bowen</u>, 35 F.3d 1027 (6th Cir. 1994) (citing <u>Mullen v. Bowen</u>, 800 F.2d 535, 548 (6th Cir. 1986)); <u>Crisp v. Secretary, Health and Human Servs.</u>, 790 F.2d 450 n. 4 (6th Cir. 1986).

After considering the entire record, the ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through March 31, 2013.

2.  The claimant has not engaged in substantial gainful activity since December 1, 2007, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*).

3.  The claimant has the following severe impairments: asthma, major

depressive disorder, adjustment disorder with anxiety, disorder of the back, and disorder of the shoulders (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform unskilled light work as defined in 20 CFR 404.1567(b) and 416.967(b) except claimant should avoid fumes, odors, dusts, gases, and poor ventilation. Also, the claimant is limited in the left upper extremity to frequent pushing and pulling. The claimant is limited to frequent overhead reaching with the right upper extremity.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on July 10, 1969 and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 1, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 15-23).

## Issue Presented

Plaintiff contends:

1) The Commissioner's decision is not based on substantial evidence because the ALJ failed to follow this Circuit's treating physician rule and,

2) The ALJ denied plaintiff her substantive due process right to a full and fair hearing and thus, a proper determination of her claim.

## Relevant Facts

The record includes treatment notes from James Roth, M.D., of Banyan Pain Management, from March 2008 to February 2009 (Tr. 278-309). These notes show Plaintiff had some weakness of the left leg on March 27, 2008 (Tr. 282), but no paresthesia, dystesia, weakness, paralysis, or tremor on May 22, 2008 and October 8, 2008 (294, 307). On March 27, 2008, Plaintiff had normal strength in all extremities (Tr. 279, 285). Orthopedic examination was normal (negative clubbing, cyanosis, edema, normal gait and strength, no deformity or paralysis, range of motion normal in all four extremities) (Tr. 286). An April 2008 MRI of the lumbar spine was normal (Tr. 342). On February 25, 2009, Plaintiff's condition was stable and improving (Tr. 309). An April 2009 MRI of the left shoulder revealed evidence of some impingement with secondary mild tendinosis and a probable chronic partial tear and moderate osteoarthropathy of the glenohumeral joint (Tr. 380). An August 2009 MRI of the right shoulder revealed "[m]ild tendinosis of the lateral aspect of the supraspinatus tendon secondary to apparent impingement, [t]endinosis of the lateral aspect of the subscapularis tendon, no evidence of a tear, and [m]oderate osteoarthropathy" (Tr. 381).

Dr. Roth opined in a Physical Residual Functional Capacity Questionnaire dated March 2010 that Plaintiff experienced constant pain or other symptoms severe enough to interfere with

attention and concentration, Plaintiff could sit, walk, and stand less than two hours in an eight-hour workday, and would need to take unscheduled breaks during an eight-hour workday (Tr. 462-66). Dr. Roth also indicated Plaintiff could not lift and carry less than 10 pounds and Plaintiff would be absent from work more than three times a month.

Dr. Charles Cox of Tennessee Sports Medicine treated Plaintiff from August 2009 through October 2009 (Tr. 418-25). On August 11, 2009, Plaintiff told Dr. Cox that her pain was worse with lifting and overhead activities (Tr. 423). Examination of Plaintiff's left shoulder displayed active forward flexion to 150 degrees and passive forward flexion to 170 degrees (Tr. 423). Plaintiff had 5/5 internal and external rotation strength, 5/5 strength with Jobe testing. She had full flexion, extension, lateral rotation, and lateral bending with only minimal pain. She was nontender in the midline, but had tenderness in the trapezial regions. She had intact motor strength distally. Dr. Cox reported that x-rays of her shoulder showed mild degenerative changes of the AC joint, the joint space appeared well maintained (Tr. 423). Dr. Cox diagnosed a left shoulder partial rotator cuff tear with impingement and recommended physical therapy. Dr. Cox also elected to proceed with a nerve conduction study of the upper extremities (Tr. 424).

On a September 18, 2009, follow-up examination, Dr. Cox reported that the nerve conduction study was within normal limits and showed no evidence of compressive neuropathy (Tr. 420). Dr. Cox stated "[a]lthough she does have rotator cuff pathology on MRI, her presentation is not classic for rotator cuff disease. Her pain seems to be out of proportion" (Tr. 420). Plaintiff underwent an injection and reexamination several minutes following the injection revealed resolution of the vast majority of her pain. She no longer had positive impingement findings. She had full active range of motion in all planes.

On August 21, 2009, Emelito Pinga performed a consultative evaluation (Tr. 388-390). Dr. Pinga reported that plaintiff had no problem in getting out of the chair onto the examining table (Tr. 389). Musculoskeletal evaluation of the dorsolumbar spine did not show any scoliotic curve, spasm, or tenderness and straight leg raising tests in both seated and supine positions were negative (Tr. 389). Plaintiff had no muscle atrophy in the extremities. Neurological examination showed pinprick and light touch were within normal limits in the extremities. Motor strength testing was 5/5 in both hands, arms, and legs. Dr. Pinga diagnosed degenerative arthritis of the lumbar spine, degenerative disc disease, status post epidural steroid injections, a status post physical therapy, asthma, and chronic obstructive pulmonary disease (Tr. 390). Dr. Pinga opined that Plaintiff could sit hours in an 8 hour workday, walk or stand 4 hours, and limitations in any frequent lifting up weights of 5-10 pounds or occasional lifting up weights of 15 pounds (Tr. 390).

Two non-examining State agency medical consultants opined that Plaintiff could perform essentially the requirements of medium work (Tr. 405-413, 452-460). The ALJ noted that while Plaintiff "has more light exertional limitations than medium exertional limitations, I still find that these opinions are more consistent with the record as a whole" (Tr. 21).[1]

After a careful evaluation of the record and Plaintiff's testimony at the hearing, the ALJ found Plaintiff had the severe impairments of asthma, major depressive disorder, adjustment disorder with anxiety, disorder of the back and disorder of the shoulders (Tr. 15). He also found Plaintiff retained the residual functional capacity (RFC) to perform unskilled light work, except

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work. See 20 C.F.R. §§ 404.1567(c), 416.967(c).

that Plaintiff should avoid fumes, odors, dusts, gases, and poor ventilation; was limited in the left upper extremity to frequent pushing and pulling; and limited to frequent overhead reaching with the right upper extremity (Tr. 16).

The ALJ found Plaintiff could not return to her past relevant work as an administrative assistant, retail saleswoman, cashier, or production worker (Tr. 22). The ALJ obtained vocational expert (VE) testimony based upon a hypothetical question that incorporated the limitations included in the RFC finding (Tr. 16, 65-66). Based on these limitations, the VE testified that Plaintiff could perform other work that existed in significant numbers in the national economy such as an office cleaner, inspector, and packer (Tr. 67).[2] Consequently, the ALJ found Plaintiff not disabled (Tr. 23).

## Analysis

1. The Violation of the Treating Physician Rule

Plaintiff argues that the ALJ did not properly evaluate Dr. Roth's opinion expressed in a Physical Residual Functional Capacity Questionnaire, and in so doing failed to follow the treating physician rule, ignored evidence supporting the treating physician's opinion and failed to follow the proper procedure in weighing the opinion of the treating physician (Tr. 462-466). Pl.'s Br. at 9-20. For reasons that follow, I disagree.

"In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 530-31 (6th Cir.1997). Likewise, a treating physician's opinion is entitled to weight substantially

---

[2] The VE also testified that there were sedentary jobs Plaintiff could perform with the limitations the ALJ identified (Tr. 69).

greater than that of a non-examining medical advisor. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir.1985); Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir.1983). The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d); Harris v. Heckler, 756 F.2d 431 (6th Cir.1985). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see also* Walters, 127 F.3d at 530. If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. Harris, 756 F.2d at 435. *See also* Cohen v. Secretary of H.H.S., 964 F.2d 524, 528 (6th Cir.1992). The opinion of a non-examining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physicians. Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir.1987). If the ALJ rejects a treating physician's opinion, the ALJ's decision must be supported by a sufficient basis which is set forth in his decision. Walters v. Commissioner, 127 F.3d 525, 529 (6th Cir.1997); Shelman, 821 F.2d at 321.

Social Security Ruling 96-2p further provides that a treating physician's opinion is given controlling weight when: 1) the opinion comes from a "treating source," as defined in 20 CFR 404.1502 and 416.902; 2) is a "medical opinion" as defined in 20 CFR 404.1527(a) and 416.927(a); 3) is "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques; 4) and the treating source's medical opinion is also "not inconsistent" with the other "substantial evidence" in the individual's case record. "For a medical opinion to be well-

supported by medically acceptable clinical and laboratory diagnostic techniques, it is not necessary that the opinion be fully supported by such evidence. Whether a medical opinion is well-supported will depend on the facts of each case." Id. Furthermore, SSR 96-2p defines "not inconsistent" as "a term used to indicate that a well-supported treating source medical opinion need not be supported directly by all of the other evidence (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." Id.

In this case, Dr. Roth identified limitations that exceeded those of the of ALJ which limitations if credited would result in a finding of disabled. However, the ALJ did not give that opinion controlling weight but rather rejected it for several reasons. The ALJ appears to have considered Dr. Roth's responses on the questionnaire (Tr. 21). The ALJ stated "I do not credit the physician's assessment because it is not supported by his treating notes, the record as a whole or the radiology findings" (Tr. 21).

Plaintiff argues the statements the ALJ made at the hearing regarding Dr. Roth's assessment show that the ALJ did not properly consider this evidence. (Doc. 11, Plaintiff's Brief at 14-15). Plaintiff contends the hearing transcript shows the ALJ formed his own medical opinion and did not evaluate Dr. Roth's opinion. I agree with the argument of the Commissioner that the ALJ's decision shows otherwise.

Dr. Roth opined in March 2010 that Plaintiff experienced constant pain or other symptoms severe enough to interfere with attention and concentration - Plaintiff could sit, walk, and stand less than two hours in an eight-hour workday, and would need to take unscheduled breaks during an eight-hour workday (Tr. 462-66). The ALJ observed in his decision that

despite this limitation, Plaintiff did not need to use a cane or other device while walking and standing (Tr. 21). Dr. Roth indicated Plaintiff could not lift and carry less than 10 pounds and Plaintiff would be absent from work more than three times a month.

The ALJ is required to weigh each medical opinion in the record, and unless giving the opinion of Plaintiff's treating physician controlling weight, is required to give good reasons for the weight given. Wilson v. Comm'r. of Social Security, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c), 416.927(c). Factors the ALJ should consider when weighing medical evidence include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. See 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). However, the Sixth Circuit "has consistently stated that [the Commissioner] is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence." Bogle v. Sullivan, 998 F.2d 342, 347-48 (6th Cir. 1993).

In this case the ALJ discussed Dr. Roth's statement, gave it little weight and set forth his reasons, in compliance with the regulations and Sixth Circuit case law (Tr. 18, 21). I do not conclude that the ALJ "cherry picked" the evidence on which he relied as plaintiff argues. Like many cases there is evidence supporting both disability and non disability. The ALJ referred to Dr. Roth's treatment notes dated March 2008 through February 2009 (Tr. 18, 278-309). The ALJ noted that the records indicated Plaintiff had no paresthesia, dystesia, weakness, paralysis, or tremor, although there was some weakness noted of the left leg on March 27, 2005 (Tr. 18, 282, 294, 307). In a report dated March 27, 2008 (Tr. 279), Plaintiff had normal strength in all

extremities (Tr. 285). Orthopedic examination was normal (negative clubbing, cyanosis, edema, normal gait and strength, no deformity or paralysis, range of motion normal in all four extremities) (Tr. 286). The ALJ indicated an April 2008 MRI of the lumbar spine was normal (Tr. 342). The ALJ observed that on February 25, 2009, Plaintiff's condition was stable and improving (Tr. 309).

There was other medical evidence in the record. Dr. Cox, another treating physician, reported that examination of Plaintiff's left shoulder displayed active forward flexion to 150 degrees and passive forward flexion to 170 degrees (Tr. 423). She had 5/5 internal and external rotation strength, 5/5 strength with Jobe testing. She had full flexion, extension, lateral rotation, and lateral bending with only minimal pain. She was non-tender in the midline, but had tenderness in the trapezial regions. She had intact motor strength distally. Dr. Cox reported that x-rays of her shoulder showed mild degenerative changes of the AC joint, the joint space appeared well maintained (Tr. 423). Dr. Cox diagnosed a left shoulder partial rotator cuff tear with impingement and recommended physical therapy. Dr. Cox also elected to proceed with a nerve conduction study of the upper extremities (Tr. 424). Dr. Cox reported that the nerve conduction study was within normal limits and showed no evidence of compressive neuropathy (Tr. 420). Dr. Cox stated "[a]lthough she does have rotator cuff pathology on MRI, her presentation is not classic for rotator cuff disease. Her pain seems to be out of proportion." Plaintiff underwent an injection and reexamination several minutes following the injection revealed resolution of the vast majority of her pain. She no longer has positive impingement findings. She had full active range of motion in all planes (Tr. 420).

The ALJ also considered the August 21, 2009, consultative evaluation of Dr. Emelito

Pinga (Tr. 382-390). Dr. Pinga reported Plaintiff had no problem in getting out of the chair onto the examining table (Tr. 389). Musculoskeletal evaluation of the dorsolumbar spine did not show any scoliotic curve, spasm, or tenderness and straight leg raising tests in both seated and supine positions were negative (Tr. 389). Plaintiff had no muscle atrophy in the extremities. Neurological examination showed pinprick and light touch were within normal limits in the extremities. Motor strength testing was 5/5 in both hands, arms, and legs.

Next, the ALJ considered Plaintiff's activities of daily living which included performing household chores such as cleaning and laundry (Tr. 21, 215). The ALJ observed that although Plaintiff's work activity after her alleged onset date did not constitute substantial gainful activity, "it does indicate the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported" (Tr. 21). A claimant's level of daily activity is a factor the Commissioner may consider in determining the extent to which pain or other symptoms are disabling. See 20 C.F.R. §§ 404.1529(c)(3)(I), 416.929(c)(3)(I), Blacha v. Commissioner of Health and Human Services, 927 F.2d 228, 231 (6th Cir. 1990); Bogle, 998 F.2d at 348 (as a matter of law, an ALJ may consider household and social activities in evaluating complaints of disabling pain). Looking at the record as a whole, I conclude there is substantial evidence to support the conclusion that the evidence was inconsistent with the severe limitations Dr. Roth described.

Plaintiff points out that the ALJ did not discuss certain factors included in Wilson, such as the examining relationship, treatment relationship and length thereof, and the nature and extent of the treatment relationship. (Doc. 11, Plaintiff's Brief at 16-17). As the Sixth Circuit held in Francis v. Comm'r of Soc. Sec., 414 Fed App'x 802, 805 (6th Cir. 2011), the treating

physician rule is not "a procrustean bed, requiring an arbitrary conformity at all times," citing Friend v. Comm'r of Soc. Sec., 375 Fed. App'x 543, 551 (6th Cir. 2010). In Francis, the ALJ had not discussed several of the factors set out in 20 C.F.R. § 404.1527(d)(2), but the court held that he did not have to do an exhaustive factor-by-factor analysis. Id. at 804-05. As long as the goal of the regulation is met, i.e. providing a clear understanding of the reasons for the weight given to a treating physician's opinion, any procedural error will be harmless. Id. at 805. I agree with the argument of the Commissioner that the ALJ provided a sufficient explanation of the reasons for giving Dr. Roth's opinion little weight.

2. The Due Process Argument

Next Plaintiff argues the hearing was conducted in such a manner as to deny her substantive due process rights to a full and fair hearing and thus a proper determination of her claim. For reasons that follow, I do not agree. In support of this argument Plaintiff cites Lashley v. Sec'y of Health & Human Servs., 708 F.2d 1048 (6th Cir. 1983). As the Commissioner notes, Lashley arose when an unrepresented claimant with limited intelligence who was inarticulate and easily confused was not adequately questioned by the ALJ at his hearing. Lashley, 708 F.2d at 1052. Plaintiff apparently recognizes that she was represented at her hearing, but relies on Lashley for the proposition that the ALJ must fully develop the record. Plaintiff contends the ALJ "repeatedly interrupted Plaintiff's counsel in his line of questioning, took over the hearing and effectively denied counsel the opportunity to follow through with any consistent questioning." (Doc. 11, Plaintiff's Brief at 21). At the hearing Plaintiff's counsel did question Plaintiff about her previous employment in order to establish that the jobs she performed were unsuccessful work attempts and did not constitute substantial gainful activity (SGA) after

Plaintiff's alleged onset date.  The ALJ did interject during counsel's examination, but appeared to do so to point out that he would need more documentation to find that Plaintiff had engaged in SGA.  In any event, the ALJ made a specific finding that Plaintiff had not engaged in SGA since the alleged onset date (Tr. 15, Finding 2).  Plaintiff was not prejudiced by the ALJ's interruption of counsel's questioning on this issue.  See Shinseki v. Sanders, 556 U.S. 396,  129 S. Ct. 1696, 1706 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); Rabbers v. Comm'r Soc. Sec. Admin., 582 F.3d 647, 657-61 (6th Cir. 2009) (finding harmless an ALJ's error that did not prejudice the Plaintiff); Smith v. Comm'r Soc. Sec., 482 F.3d 873, 875-76 (6th Cir. 2007); Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."); Higgs v. Bowen, 880 F.2d 860, 864 (6th Cir. 1988); N.L.R.B. v. Wyman-Gordon Co., 394 U.S. 759, 766 n.6 (1969) (when "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game").

Plaintiff contends the ALJ essentially demonstrated bias by making disparaging remarks about Dr. Roth, specifically "Dr. Roth is a pain doctor.  He just says whatever she [Plaintiff] says to him.  There's no rationale for it" (Tr. 47).  Pl.'s Br. at 15.  As the Commissioner argues, when faced with a claim of bias, this Court must start with the presumption that administrative adjudicators are unbiased and exercise their decision-making authority with honesty and integrity.  See Schweiker v. McClure, 456 U.S. 188, 195 (1982); Withrow v. Larkin, 421 U.S. 35, 47 (1975).  The burden of overcoming this presumption rests on the party making the

assertion of bias.  McClure, 456 U.S. at 195.  A party must rebut the presumption by showing a

conflict of interest or some other specific reason for disqualification.  Id.  The presumption can

be overcome only with convincing evidence that "a risk of actual bias or prejudgment" is present.

Withrow, 421 U.S. at 47.  To be disqualifying, the alleged bias "must stem from an extrajudicial

source and result in an opinion on the merits on some basis other than what the judge learned

from his participation in the case."  United States v. Grinnell Corp., 384 U.S. 563, 583 (1966).

Judicial rulings, routine trial administration efforts, and ordinary admonishments that do not rely

upon knowledge acquired outside the course of judicial proceedings are not grounds for

disqualification.  Opinions formed from facts or events arising during the current or prior

proceedings are not grounds for a recusal motion unless they display deep-seated favoritism or

antagonism.  Accordingly, Plaintiff has the burden of showing that the ALJ engaged in conduct

that was so extreme it deprived him of the fundamental fairness that due process mandates.  See

Liteky v. United States, 510 U.S. 540, 556 (1994); McClure, 456 U.S. at 195-96.  I agree with

the Commissioner that Plaintiff failed to meet that burden here.  The ALJ appears to be

commenting on the evidence in the record before him.  The Commissioner points to United

States v. Morrow, 977 F.2d 222, 226 (6th Cir. 1992) (en banc), in response to a claim of bias

where a judge commented that the government's case was strong and warned that perjury by the

defendants would be punished with a longer sentence if found guilty, the Sixth Circuit stated that

a court may analyze and comment upon evidence and express opinion about testimony of

witnesses and doing these things did not constitute bias.  Here, the ALJ was commenting upon

the evidence and expressing his opinion, which constitutes permissible judicial conduct.  The

ALJ's opinion appears to have been formed from facts arising during the current proceedings and

did not display deep-seated favoritism, antagonism, or bias.  See Liteky, 510 U.S. at 555.

Plaintiff points out several instances of alleged inappropriate comments made by the ALJ.  Pl.'s Br. at 21 ("you're wasting your time and my time"), Pl.'s Br. at 22, citing Tr. 60 ("Are we close to the end of this?").  Certainly the ALJ could have tempered his remarks, and perhaps should have, but I do not see the comments as showing bias against Plaintiff or that the ALJ failed to fulfill his role as a neutral finder of fact.   Plaintiff fails to show that the ALJ's opinion resulted from something other than consideration of the evidence in this case.  See Grinnell, 384 U.S. at 583.

Plaintiff asserts the ALJ "effectively silenced counsel" with his interruptions and did not permit Plaintiff to testify (Doc 11,  Plaintiff's Brief at 21, 22)  ("Judge Feibus repeatedly interrupts the Claimant during her testimony and seems to be providing the testimony himself") . However, one can read Judge Feibus' statements as an attempt to direct Plaintiff to articulate her symptoms and limitations (Tr. 49-59).  His comments to her were not always critical in fact he observed during the hearing that Plaintiff had "heroically gone and tried to work at various jobs" (Tr. 46).  He did interrupt the lawyer at times in his questioning but I do not conclude that he prevented the lawyer from framing his questions.  As the trier of fact, the ALJ properly carried out his duty to develop the record and ensure that Plaintiff had a full and fair hearing.  See Lashley, 708 F.2d at 1052; Perschka v. Commissioner of Social Security, No. 09-6328, 411 Fed.Appx. 781, 788 (6th Cir. Dec. 30, 2010) (observing that plaintiff had not shown that the ALJ failed to fully and fairly develop the record having held a hearing, reviewed several hundred pages of medical records, and solicited VE testimony).  I conclude the ALJ weighed the evidence and formulated the RFC assessment he deemed appropriate based on the evidence he found

credible in the record. He properly developed the record and did not demonstrate judicial bias that violated Plaintiff's right to due process.

Conclusion

Having carefully reviewed the entire administrative record and the briefs of the parties filed in support of their respective motions, I conclude there is substantial evidence in the record to support the findings of the ALJ and the decision of the Commissioner, and neither reversal nor remand is warranted on these facts. Accordingly, I RECOMMEND:

> (1)  The plaintiff's motion for judgment on the pleadings (Doc. 10) be DENIED.
>
> (2)  The defendant's motion for summary judgment (Doc. 12) be GRANTED.
>
> (3)  The case be DISMISSED. [3]

S /William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[3] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).